IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| Israel Ruiz (K-83131), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 50133 |
| v. | ) | |
| | ) | Hon. Philip G. Reinhard |
| Michael D. Remmers, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff has paid the filing fee and his amended complaint is accepted. The court directs the Clerk of Court to: (1) issue summons for service of the amended complaint [8] on defendant Remmers; (2) dismiss all other defendants; and (3) send plaintiff one blank USM-285 (Marshals service) form and a copy of this order. Because plaintiff has paid the filing fee and is not proceeding *in forma pauperis*, he is not necessarily entitled to service at government expense. Fed. R. Civ. P. 4(c)(3). Additionally, plaintiff has not demonstrated that he cannot pay the required deposit to the U.S. Marshal. Plaintiff must either: (1) serve defendant himself; (2) retain a private process server to serve defendant; or (3) employ the services of the U.S. Marshal to serve defendant. The U.S. Marshal is directed to send plaintiff the request for payment of the deposit to effectuate service (service costs generally range between $65.00 and $250.00 per location). If plaintiff elects to employ the services of the U.S. Marshal, he must pay the required deposit and submit the completed USM-285 service form by June 22, 2023; the U.S. Marshal will not take further action until the deposit has been paid and the USM-285 service form is returned. Plaintiff also must promptly submit a change-of-address notification if he is transferred to another facility or released. If plaintiff fails to keep the court informed of his address, this action will be subject to dismissal for failure to comply with a court order and for failure to prosecute. The Clerk is also directed to send a copy of this order to the U.S. Marshal. The U.S. Marshal is appointed to effect service (assuming plaintiff chooses service via this option and pays the appropriate deposit) and is authorized to send a request for waiver of service in the manner prescribed by Fed. R. Civ. P. 4(d) before attempting personal service.

## STATEMENT

Plaintiff Israel Ruiz, a prisoner at Dixon Correctional Center, brings this action *pro se* regarding a disciplinary proceeding at Dixon. Presently before the court is the review of plaintiff's amended complaint as required by 28 U.S.C. § 1915A.

The court is required to screen prisoners' complaints and dismiss the complaint, or any claims therein, if the court determines that the complaint or claim is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against an immune

defendant. 28 U.S.C. § 1915A; *see Jones v. Bock,* 549 U.S. 199, 214 (2007); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Courts screen prisoners' complaints in the same manner they review motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). The statement also must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," which means that the pleaded facts must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When screening a *pro se* plaintiff's complaint, courts construe the plaintiff's allegations liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam). Courts also must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff's favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016).

Plaintiff alleges that on May 31, 2021, he was in his cell when his cellmate placed a piece of cardboard in the cell door locking mechanism so that the cell door would not lock and the cellmate could exit the cell. [8, p. 7.] The cellmate exited the cell and shortly thereafter, Officer Papke came to the cell and observed the cardboard. *Id*. Officer Papke wrote a disciplinary ticket against plaintiff for dangerous contraband even though plaintiff's cellmate was outside the cell without permission. *Id*.

On June 8, 2021, plaintiff went before Lieutenant Remmers and Forrest for the Adjustment Committee Hearing. *Id*. Plaintiff asked for a continuance so he could present three witnesses to demonstrate that plaintiff's cellmate was the individual that used the cardboard and that plaintiff was innocent of the charge. *Id.*, pp. 7-8. Remmers refused the continuance and refused to hear plaintiff's witnesses. *Id*., p. 8. Remmers told plaintiff, "No. First I hear your side of the story, then I'll call the witnesses, you're the one who likes writing grievances on officials due to COVID." *Id*., p. 9. Plaintiff turned in his written statement, was not allowed to present his witnesses, and was found guilty of the charge. *Id*. Plaintiff received three months C-grade, a disciplinary transfer, three months commissary restrictions, and eventually lost his job within the prison. *Id*.

Later in June 2023, plaintiff submitted a grievance to Officer Wells along with two affidavits supporting his claim that he was not responsible for the cardboard. *Id*. Wells informed plaintiff that he received the affidavits but when plaintiff received his grievance back, the affidavit of his cellmate was missing and the grievance was denied. *Id*. Plaintiff alleges that Wells retaliated against him by not investigating his co-workers and by not returning his cellmate's affidavit to prevent plaintiff from including the affidavit with his appeal to the ARB. *Id*. Similarly, Officer Payne did not properly address plaintiff's grievances because she refused to investigate her co-workers, and she prevented plaintiff from including his cellmate's affidavit with his appeal to the ARB. *Id*.

Plaintiff alleges that Warden Wilks failed to take any corrective action about his staff's

conduct after receiving grievances regarding the incident and he concurred with the harsh punishment. *Id.*, pp. 10-11. At some unspecified time, the ARB reduced the charge against plaintiff and reduced the punishment to two months C-grade status. *Id*. p., 8. However, plaintiff had already finished the original punishment. *Id*.

Plaintiff names Remmers, Forrest, Wells, Payne, and Warden Wilks as defendants.

Plaintiff first attempts to raise due process claims against all defendants based on the disciplinary report, hearing, and punishment. To state a due process claim arising from prison disciplinary proceedings, a prisoner must allege facts that plausibly suggest that, among other things, he had a protected interest that necessitated due process protections. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A protected interest exists when punishment extends the duration of confinement (not at issue here as plaintiff does not allege that he lost good time credit) or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Plaintiff alleges that he received three months C-grade, three months commissary restrictions, and a disciplinary transfer (along with losing his prison job). The court does not intend to diminish plaintiff's dissatisfaction with the fact that he completed his punishment before he was partially vindicated. However, his allegations nevertheless do not rise to the level of a constitutional violation—"an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also*, *Thomas v. Ramos*, 130 F.3d 754, 757-58, 760-61 (7th Cir. 1997) (inmate not deprived of liberty interest when he spent 70 days in 24-hour segregation in a locked cell without access to prison programs or exercise, and little contact with other people); *Hardaway v. Meyerhoff*, 734 F.3d 740, 744 (7th Cir. 2013) (same when inmate spent six months in segregation behind a steel door with a confrontational cellmate and had only weekly access to shower and prison yard); *Lekas v. Briley*, 405 F.3d 602, 608-09 (7th Cir. 2005) (no liberty interest for 90 days in segregation); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & nn.2-3 (7th Cir. 2009) (acknowledging that "a liberty interest *may* arise if the length of segregated confinement is substantial and the record reveals that the conditions of confinement are unusually harsh" and surveying cases concluding that up to a ninety-day period in segregation does not trigger due process concerns) (emphasis in original); *cf. Williams v. Brown*, 849 Fed. App'x 154, 157 (7th Cir. 2021) (reversing finding that a prisoner had received "all the process he was due" after spending eight months in extreme segregative conditions before discipline was expunged). In addition, there is no constitutionally protected property or liberty interest in a prison job. *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). For these reasons, plaintiff's due process claims against all defendants are dismissed without prejudice for failure to state a claim.

The court next considers plaintiff's retaliation claims. To state a retaliation claim in the prison context, an inmate must allege facts suggesting that: (1) he engaged in protected First Amendment activity, such as filing a grievance or initiating a lawsuit; (2) he was subjected to an adverse action that would deter a prisoner of ordinary firmness; and (3) his First Amendment activity was "at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Here, plaintiff alleges that Remmers cited to plaintiff's previous grievances regarding the prison's response to COVID-19 in denying a continuance in his disciplinary hearing as well in denying his ability to call witnesses. These allegations warrant further investigation as to a retaliation claim against Remmers. Plaintiff may proceed on his retaliation claim against Remmers in his individual capacity.

However, plaintiff's allegations of retaliation by all other defendants fail to sufficiently allege their conduct was in any way related to a protected First Amended activity. Instead, plaintiff essentially speculates that any decisions by these defendants was done in retaliation for some unknown reason. *See Dorsey v. Williams*, No. 21-1858, 2022 WL 337192, at *1 (7th Cir. Feb. 4, 2022) (holding that prisoner's assertion that correctional officials "sought to punish him relies on speculation and is thus insufficient") (unpublished order). Thus, these claims are dismissed without prejudice.

The court further notes that any claims related to how his grievances were handled fail to state a claim. The law in the Seventh Circuit is clear, there is no right to a jail grievance system and no cause of action based on the ineffectiveness of such a system. *See Courtney v. Devore*, 595 Fed. App'x. 618, 620-21 (7th Cir. 2014) (non-precedential disposition) ("grievance procedures do not create substantive liberty interests protected by due process," and the "mishandling" of those grievances states no claim); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *see also Delgado v. Godinez*, 683 F. App'x 528, 530 (7th Cir. 2017) ("If as a practical matter the grievance process is so ineffective as to be unavailable to the prisoner, the only consequence is that he is relieved of the duty to exhaust.") (citing *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016)).

Based on the above, plaintiff may proceed on his retaliation claim against Remmers. All other claims and defendants are dismissed without prejudice.

The court directs the Clerk of Court to issue summons for service of the amended complaint on defendant Remmers. The court directs the Clerk to mail plaintiff one USM-285 (Marshals service) form. The U.S. Marshals will not attempt to serve defendant unless and until the required form is received. Plaintiff must therefore complete and return service form for defendant, and failure to do so may result in dismissal of this case in its entirety. Because plaintiff has paid the filing fee and is not proceeding *in forma pauperis*, he is not necessarily entitled to service at government expense. Fed. R. Civ. P. 4(c)(3). Therefore, plaintiff must either: (1) serve defendant himself; (2) retain a private process server to serve defendant; or (3) employ the services of the U.S. Marshal to serve defendant. The U.S. Marshal is directed to send plaintiff the request for payment of the deposit to effectuate service (service costs generally range between $65.00 and $250.00 per location). If plaintiff elects to employ the services of the U.S. Marshal, he must pay the required deposit; the U.S. Marshal will not take further action until the deposit has been paid. Failure to effect service by the date set forth above may result in dismissal of this case.

      The court instructs plaintiff to file all future papers concerning this action with the Clerk of this Court in care of the Prisoner Correspondent. Every document submitted by plaintiff must include a certificate of service indicating the date on which plaintiff gave the document to prison authorities for mailing. Any letters or other documents sent directly to a judge or that otherwise fail to comply with these instructions may be disregarded by the court or returned to plaintiff. Plaintiff is advised that he must promptly submit a change-of-address notification if he is transferred to another facility or released. Failure to do so may lead to dismissal of this action for failure to comply with a court order and for want of prosecution.

Date: 5/18/2023                                        ENTER:

                                                                    *Philip G. Reinhard*
                                                           United States District Court Judge

                                                                   Docketing to Mail Notices.